UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DESIREE SCOTT, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>AHOLD DELHAIZE USA SERVICES, LLC,<br><br>Defendant. | Civil Action No. 1:25-cv-559<br><br>**Class Action Complaint**<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff Desiree Scott ("Plaintiff"), by and through her undersigned counsel, brings this action on behalf of herself and a class of similarly situated individuals ("Class" or "Class Members") whose personally identifiable information was compromised as a result of a widespread and preventable data breach involving Ahold Delhaize USA Services, LLC ("Defendant" or "Ahold").

## NATURE OF THIS CASE

1. Plaintiff brings this class action case against Defendant for its major failures to secure and safeguard consumers' and former and current employees' personally identifiable information ("PII") and, in some instances, protected health information ("PHI") (together "PII/PHI") that was compromised as a result of a widespread and preventable data breach ("Data Breach"). The Data Breach involved PII and PHI that Ahold collected from its various subsidiaries, including Hannaford

Supermarkets, Fresh Direct, Pea Pod, Food Lion, and Giant Food, among others, in connection with the operation of its business, and which Ahold failed to timely disclose. In fact, Ahold failed provide timely, accurate and adequate notice to Plaintiff and other Class members that their PII/PHI had been taken by an unauthorized third party and that thus that they were faced with imminent danger of identity theft, fraud and the misuse of their PII and PHI for over seven months.

2. Defendant, the parent company and service provider for several major grocery retailers throughout the United States, including Hannaford Supermarkets, Food Lion, Giant Food, The Giant Company, Stop & Shop, FreshDirect, Peapod Digital Labs, Retail Business Services, and ADUSA Distribution, negligently or recklessly failed to secure sensitive consumer and employee data against foreseeable cyber threats.

3. Plaintiff, a resident of Portland, Maine, who was employed by Hannaford Supermarkets from 2010 through 2018, received a letter dated on or about June 26, 2025, informing her that her personal data, including her social security number, had been accessed without authorization during a cybersecurity incident (the "Data Breach Letter").

4. In the Data Breach Letter, Defendant acknowledged that the cybersecurity incident or Data Breach had occurred months earlier-- between November 3 and November 6, 2024. However, Defendant failed to timely disclose the breach to affected individuals until over seven months later, depriving Plaintiff and others of any meaningful opportunity to protect themselves from identity theft and fraud.

5. The data exposed includes names, dates of birth, Social Security numbers, employment records, and, in some instances, protected health information, all of which are of significant value to cybercriminals operating on the dark web.

6. As a result of Defendant's negligence or reckless conduct and its intentional failure to timely provide notice of the Data Breach, Plaintiff and Class Members face a significant risk of identity theft, financial harm, emotional distress, and a loss of privacy for a prolonged period of time.

7. The PII/PHI for Plaintiff and the Class she seeks to represent was compromised due to Ahold's acts and omissions and its failure to properly protect their PII/PHI.

8. Ahold could have prevented this Data Breach, as such data breaches are well known, and Ahold should have but failed to take adequate measures to protect the PII/PHI that it collected and maintained.

9. The Data Breach was the inevitable result of Ahold's inadequate approach to data security and the protection of the PII/PHI that it collected during the course of its business.

10. Ahold disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to disclose to its customers and former and current employees the material fact that it did not have adequate computer systems and/or payment processor servers and security practices to safeguard PII/PHI, failing to take available steps to prevent and stop the breach from ever

happening, failing to monitor and detect the breach on a timely basis, and failing to timely notify Plaintiff and Class Members of the Data Breach.

11. As a result of the Ahold Data Breach, the PII/PHI of the Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered by Plaintiff and Class Members as a direct result of the Data Breach include:

a. unauthorized use of their PII/PHI;

b. theft of their personal and financial information;

c. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d. damages arising from the inability to use their PII/PHI;

e. loss of use of and access to their funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

f. costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

g. the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII/PHI being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class Members' information on the Internet black market;

h. damages to and diminution in value of their PII/PHI entrusted to Ahold for the sole purpose of employment or purchasing products and services from Ahold; and

i. the loss of Plaintiff's and Class Members' privacy.

12. The injuries to the Plaintiff and Class members were directly and proximately caused by Ahold's failure to implement or maintain adequate data security measures for PII/PHI.

13. Further, Plaintiff retains a significant interest in ensuring that her PII/PHI, which, while stolen, remains in the possession of Ahold is protected from further breaches, and seeks to remedy the harms she has suffered on behalf of herself and similarly situated consumers and former and current employees whose PII/PHI was stolen as a result of the Data Breach.

14. Plaintiff brings this action to remedy these harms on behalf of herself, and all similarly situated individuals whose PII/PHI was accessed during the Data Breach. Plaintiff seeks the following remedies, among others: reimbursement of out-of-pocket losses, compensatory damages, injunctive and equitable relief, including further and more robust credit monitoring services with accompanying identity theft insurance, and an

order requiring Ahold to implement improved data security measures, among other things.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than 100 members of the proposed Class; and at least one Class Member is a citizen of a state different from Defendant.

16. This Court has personal jurisdiction over Defendant because it is incorporated under the laws of the State of Delaware and maintains its principal place of business in North Carolina. Defendant regularly conducts business in this District and has purposefully availed itself of the laws and protections of this forum. The claims asserted herein arise from Defendant's contacts with this State and District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because Defendant resides in this District for purposes of venue as a corporate entity subject to this Court's personal jurisdiction, and a substantial part of the events or omissions giving rise to the claims occurred in this District, including decisions regarding the collection, storage, and failure to secure the sensitive personal information at issue.

## PARTIES

18. Plaintiff Desiree Scott is a citizen and resident of the state of Maine. On or about June 26, 2025, Plaintiff received the Data Breach Letter from Defendant notifying her that her PII/PHI had been breached. Defendant maintained Plaintiff's PII/PHI, as she

was formerly employed by Hannaford Supermarkets in Maine from the period of 2010 to 2018.

19. Defendant Ahold is a Delaware limited liability company headquartered in North Carolina, and the parent company and service provider for several major grocery retailers throughout the United States, including Hannaford Supermarkets, Food Lion, Giant Food, The Giant Company, Stop & Shop, FreshDirect, Peapod Digital Labs, Retail Business Services, and ADUSA Distribution.

## STATEMENT OF FACTS

20. In early November 2024, Ahold experienced a significant cybersecurity incident involving unauthorized access to its internal business systems. The attack was carried out by a sophisticated ransomware group known as INC Ransom, which publicly claimed responsibility for the breach and posted Ahold's name on its dark web leak site on or about November 6, 2024. INC Ransom asserted that it had exfiltrated approximately six terabytes of sensitive data from Ahold's infrastructure, an amount that strongly suggests a deep and extensive compromise of employee and administrative records.

21. Although Ahold was aware of the ransomware attack by November 6, 2024, it did not begin notifying affected individuals until nearly eight months later, in late June 2025. This unjustifiable delay in disclosure not only violated the industry's best practices and regulatory guidance for breach response but also left victims unaware and vulnerable to misuse of their PII/PHI for an extended period.

22. According to public reports and the breach notification letters Ahold sent to impacted individuals, the compromised data included highly sensitive PII/PHI such as:

- Full names
- Dates of birth
- Social Security numbers
- Driver's license or government-issued ID numbers
- Home addresses
- Phone numbers
- Email addresses
- Employment-related information, including job history and direct deposit banking details
- Health-related information contained in administrative files (e.g., workers' compensation, disability claims, or leave documentation).

23. On or about June 26, 2025, Plaintiff Scott, a resident of Portland, Maine, received a written notification from Ahold advising that her personal data had been part of the breach. Although Plaintiff's employment with Hannaford Supermarkets, an Ahold subsidiary, ended in 2018, her information was still maintained on Ahold's systems at the time of the breach without her knowledge, consent, or for any stated reason.

24. Plaintiff's compromised data included immutable identifiers such as her Social Security number and date of birth, which cannot be altered or reissued and are frequently used by criminals to commit synthetic identity fraud, credit fraud, tax refund fraud, and other forms of financial exploitation.

25. The fact that Plaintiff's employment ended more than six years before the breach demonstrates Ahold's practice of retaining sensitive PII/PHI far beyond what is necessary or justifiable. Ahold failed to purge or de-identify former employee records and offered no process for requesting deletion or limitation of data retention.

26. Upon information and belief, Ahold did not encrypt the data that was exfiltrated, did not adequately segment access to its most sensitive systems, and failed to implement sufficient real-time threat detection tools. These failures violated basic cybersecurity norms and rendered Ahold's systems an attractive and vulnerable target to known ransomware groups.

27. Ahold's delay in notifying victims sharply contrasts with industry standards, which call for prompt notice, typically within 30 to 60 days of discovery, to mitigate harm and enable individuals to take protective action such as freezing credit, changing passwords, or monitoring financial activity.

28. The Data Breach affected over 2.2 million individuals, primarily current and former employees of Ahold and its affiliated operating companies, including Hannaford, Food Lion, The GIANT Company, Giant Food, Stop & Shop, ADUSA Distribution, ADUSA Transportation, and Retail Business Services LLC.[1] In addition to employees, the breach impacted spouses, dependents, and beneficiaries whose personal information was maintained in Ahold's centralized human resources, payroll, and insurance systems.[2] Ahold has also acknowledged that some customers may have been affected.[3] The compromised information varied by individual but included sensitive data such as names, dates of birth, Social Security numbers, government-issued IDs, contact

[1] Jessica Lyons Hardcastle, *Ahold Delhaize Breach: 2.2M Affected by HR Data Exposure at US Grocery Giant*, The Register (June 27, 2025).

[2] *Id*.

[3] Gillian Graham, *Hannaford's Parent Company Says Customers' Information Was Compromised in Cyber Breach*, Portland Press Herald (June 26, 2025), https://www.pressherald.com/2025/06/26/hannafords-parent-company-says-customers-information-was-compromised-in-cyber-breach.

information, financial account details, and health or workers' compensation-related information contained in employment records.[4]

29. Ahold's offer of two years of identity theft monitoring is grossly inadequate considering the permanent nature of the identifiers breached and the longevity of data misuse threats. Identity fraud related to breaches involving Social Security numbers and health data often occurs years after the initial exposure.

30. Victims of this breach, including Plaintiff, have already suffered tangible injuries including loss of privacy, anxiety, emotional distress, an increase in spam and phishing emails and phone calls, and time spent monitoring credit reports and securing financial accounts. Many will continue to face ongoing risks and costs for years, if not decades, due to Ahold's failures.

**Defendant Acquires, Collects, And Stores Plaintiff's and Class Members' PII/PHI**

31. Ahold Delhaize acquires, collects, and stores a massive amount of PII and PHI of its current and former employees as well as certain customers. This includes individuals affiliated with its retail subsidiaries such as Hannaford Supermarkets, Food Lion, Giant Food, Stop & Shop, The Giant Company, and FreshDirect.

32. By obtaining, collecting, and using the PII and PHI of Plaintiffs and Class Members for its operational and business purposes, Ahold assumed legal and equitable

---

[4] Viktor Zarev, *Ahold Delhaize USA Cyberattack Affects Millions*, Cybernews (June 28, 2025), https://cybernews.com/security/ahold-delhaize-usa-cyberattack-affects-millions.

duties to safeguard this sensitive information and knew or should have known that it bore responsibility for protecting it from unauthorized access and disclosure.

33. Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI.

34. Plaintiff and the Class Members relied on Defendant to keep their PII and PHI confidential, to use it solely for legitimate business purposes, and to implement appropriate technical, administrative, and physical safeguards to prevent unauthorized disclosures.

**The Data Breach Was a Foreseeable Risk of Which Defendant Was on Notice**

35. Ahold was on notice that its systems were vulnerable to attack and that cybercriminals increasingly target companies that collect large amounts of personal data.

36. Social Security numbers, employment data, and PHI are all highly sensitive and particularly valuable to criminals seeking to commit identity theft, tax fraud, or obtain medical treatment and prescriptions under stolen identities.

37. The U.S. Department of Justice has emphasized the severe harms caused by identity theft, both direct and indirect, including fraudulent loans, credit damage, legal fees, and emotional distress.[5]

38. Individuals, like Plaintiff and Class Members, cannot easily replace their Social Security numbers and are often unable to fully mitigate the long-term impact of a data breach once their identities are compromised.[6]

---

[5] U.S. Dep't of Just., *Identity Theft and Identity Fraud*, https://www.justice.gov/criminal-fraud/identity-theft/identity-theft-and-identity-fraud (last visited July 1, 2025).

39. Despite extensive knowledge of data breaches affecting similarly situated corporations, including Microsoft (250 million records), Facebook (267 million users), and others, Defendant failed to upgrade its security protocols to match evolving threats.

40. The FBI and U.S. Secret Service have issued multiple bulletins warning of ransomware attacks and urging businesses to harden their defenses.[7]

41. According to the FBI, ransomware attacks are increasingly used to extort companies by locking or stealing sensitive data, with the attackers often threatening to release it publicly unless paid a ransom.[8]

42. Defendant was aware of these risks and failed to implement appropriate systems, training, and monitoring to detect and stop the intrusion.

**Defendant Failed to Comply with Federal Trade Commission Guidelines**

43. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair or deceptive acts or practices in or affecting commerce," which includes failing to employ reasonable data security measures.

44. The FTC has issued numerous guidelines and publications requiring businesses to:

---

[6] Soc. Sec. Admin., *Identity Theft and Your Social Security Number*, SSA Pub. No. 05-10064, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited July 1, 2025).

[7] Fed. Bureau of Investigation, *Ransomware Attacks on the Rise*, FBI IC3 Alert No. PSA210930, https://www.ic3.gov/Media/Y2021/PSA210930 (Sept. 30, 2021).

[8] Cracking Down on Ransomware: Strategies for Disrupting Criminal Hackers and Building Resilience Against Cyber Threats: Hearing Before the S. Comm. on Homeland Sec. & Governmental Affs., 117th Cong. (July 27, 2021) (statement of Bryan Vorndran, Assistant Dir., Cyber Div., Fed. Bureau of Investigation), https://www.fbi.gov/news/speeches-and-testimony/cracking-down-on-ransomware-strategies-for-disrupting-criminal-hackers-and-building-resilience-against-cyber-threats.

- Protect personal customer information;
- Encrypt stored data;
- Regularly assess network vulnerabilities;
- Limit data retention;
- Monitor for suspicious activity;
- Oversee third-party vendors.

45. Defendant failed to comply with these practices, thereby subjecting Plaintiff and Class Members' PII and PHI to theft.

**Ahold Privacy Policy Violations**

46. Defendant's own Privacy Statement asserts that "[t]he protection of personal data is paramount to Ahold Delhaize," and acknowledges that "[c]ustomers, associates, and business partners entrust our businesses with their personal data". The policy further states that Ahold Delhaize is "committed to safeguarding this information." [9]

47. The Policy outlines its obligation to safeguard personal data, and specifically, states: "We implement appropriate technical and organizational measures to secure personal data from unauthorized access, disclosure, alteration or destruction.[10]

48. This public-facing policy creates enforceable duties to consumers and employees who reasonably relied on Defendant's representations when providing their personal information to Defendant or its subsidiaries, including for purposes of employment, benefits administration, or customer service.

---

[9] Ahold Delhaize, *Privacy Statement*, https://www.aholddelhaize.com/sustainability/our-position-on-societal-and-environmental-topics/data-privacy/ (July 2, 2025).

[10] *Id.*

49. The Privacy Statement also affirms that Ahold will only process personal data where it has a legal basis to do so, including "to comply with legal obligations," "for our legitimate interests (provided your rights don't override these)," and "based on your consent."[11]

50. Ahold breached these express and implied promises by, among other things, failing to encrypt or otherwise protect highly sensitive information; failing to monitor for and detect unauthorized access to its systems; and delaying notification to affected individuals for more than seven months after the ransomware attack occurred.

51. As a result, Plaintiff and Class Members' sensitive PII and PHI—including names, Social Security numbers, dates of birth, contact information, employment data, and, in some instances, health-related information, was exfiltrated during the cybersecurity incident and placed at grave risk of misuse, identity theft, and fraud.

**Defendant's Duty to Secure Class Members' Private Information**

52. At all relevant times, Ahold owed a duty to Plaintiff and Class Members to exercise reasonable care in protecting their PII and PHI, including:

- Encrypting and securing sensitive information;
- Implementing appropriate access controls;
- Monitoring for suspicious activity;
- Training employees to recognize and respond to threats;
- Complying with FTC guidelines and industry standards.

[11] *Id.*

53. Defendant had financial resources, technical capacity, and legal obligations to safeguard the data it collected. Yet, it failed to take these necessary precautions.

54. Standard cybersecurity protocols include:

- Use of firewalls and intrusion detection systems;
- Role-based access controls;
- Regular penetration testing;
- Data encryption in transit and at rest;
- Backup systems resistant to ransomware;
- Logging and alerting for unauthorized access.

55. Defendant failed to adopt and maintain these basic standards, exposing Plaintiff and Class Members to foreseeable and preventable harm.

56. Plaintiff reasonably believes her data has been sold or posted to the dark web based on the nature of the breach, the type of information exfiltrated, and standard criminal practice in ransomware attacks.

**Concrete Injuries Suffered by Plaintiff and Class Members**

57. As a direct and proximate result of Defendant's failure to secure their data, Plaintiff and Class Members have suffered:

- Increased risk of identity theft and fraud;
- Economic costs for credit monitoring and identity protection;
- Loss of control and privacy over their PII and PHI;
- Time spent mitigating the impact of the breach;
- Anxiety, emotional distress, and fear of future harm.

58. Cybercriminals exploit PII/PHI to open accounts, file tax returns, obtain medical services, and commit crimes in the victims' names.

59. Plaintiff's damages include out-of-pocket expenses, lost opportunity, future costs of monitoring, and the inherent value of their personal data, which is now compromised.

60. Defendant's offer of short-term credit monitoring services does not remedy the long-term risk to which Plaintiff and Class Members have been exposed.

## CLASS ALLEGATIONS

61. Plaintiff seeks relief on behalf of herself and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a Nationwide class defined as follows:

> All persons residing in the United States whose personally identifiable information (PII) and/or protected health information (PHI) was accessed, acquired, or exfiltrated in the Data Breach (**the "Nationwide Class"**).

62. Excluded from the Class are Ahold and any of its affiliates, parents or subsidiaries; all employees of Ahold; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

63. Plaintiff hereby reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

64. The proposed Class meets the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4).

65. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to

Plaintiff at this time, the proposed Class includes at least millions of individuals whose PII/PHI was compromised in the Data Breach. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

66. **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a. Whether Ahold had a duty to protect PII/PHI;

b. Whether Ahold knew or should have known of the susceptibility of their data security systems to a data breach;

c. Whether Ahold's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d. Whether Ahold was negligent in failing to implement reasonable and adequate security procedures and practices;

e. Whether Ahold's failure to implement adequate data security measures allowed the breach to occur;

f. Whether Ahold's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII/PHI of Plaintiff and Class members;

g. Whether Ahold failed in its obligations to timely notify members of the Class of the Data Breach so that they could protect themselves;

h. Whether Plaintiff and members of the Class were injured and suffered damages or other acceptable losses because of Ahold's failure to reasonably protect its POS systems and data network; and,

i. Whether Plaintiff and Class members are entitled to relief.

67. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of those of other Class members. Plaintiff had her PII/PHI compromised in the Data Breach. Plaintiff's damages and injuries are akin to other Class members and Plaintiff seeks relief consistent with the relief of the Class.

68. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Ahold to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

69. **Superiority. Fed. R. Civ. P. 23(b)(3)**. Consistent with Fed. R. Civ. P 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an

individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Ahold, and thus, individual litigation to redress Ahold's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

70. **Injunctive and Declaratory Relief**. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

71. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the Parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Ahold failed to timely notify the public of the Data Breach;

b. Whether Ahold owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI;

c. Whether Ahold's security measures were reasonable in light of data security recommendations, and other measures recommended by data security experts;

d. Whether Ahold failed to adequately comply with industry standards amounting to negligence;

e. Whether Ahold failed to take commercially reasonable steps to safeguard the PII/PHI of Plaintiff and the Class members; and,

f. Whether adherence to data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

72. Finally, all members of the proposed Class are readily ascertainable. Ahold has access to information regarding the Data Breach, the time period of the Data Breach, and which individuals were potentially affected. Using this information, the members of the Class can be identified and their contact information ascertained for purposes of providing notice to the Class.

## <u>COUNT I</u>

### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

73. Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

74. Defendant collected, stored, and maintained the PII/PHI of Plaintiff and Class Members as part of the regular course of its business operations, which services affect commerce.

75. Plaintiff and Class Members entrusted Defendant with their PII/PHI with the understanding that Defendant would safeguard their information.

76. Defendant had full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and Class Members could and would suffer if the PII/PHI were wrongfully disclosed.

77. By voluntarily undertaking and assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' PII/PHI held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duties included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

78. Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

79. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks adequately protected the PII/PHI.

80. Defendant's duty of care to use reasonable security measures arose from common law, industry standards, and applicable statutory and regulatory frameworks, including Section 5 of the FTCA and, to the extent Defendant received, stored, or transmitted protected health information in connection with administering employee health plans, the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq*.

81. Defendant's duty of care to use reasonable security measures also arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII/PHI, a necessary part of engaging with Defendant, and because Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

82. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII/PHI.

83. Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

84. Defendant had and continues to have a duty to adequately disclose that the PII/PHI of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII/PHI by third parties.

85. Defendant breached its duties, including those recognized by the FTCA, HIPAA (where applicable), and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII/PHI. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

- Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII/PHI;
- Failing to adequately monitor the security of its networks and systems;
- Allowing unauthorized access to Class Members' PII/PHI;
- Failing to detect in a timely manner that Class Members' PII/PHI had been compromised;
- Failing to remove the PII/PHI of individuals it formerly engaged with when it was no longer required to retain that information pursuant to regulations; and
- Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate action to mitigate the potential for identity theft and other damages.

86. Defendant's conduct was particularly unreasonable given the nature and amount of PII/PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

87. Plaintiff and Class Members were within the class of persons the FTCA and HIPAA were intended to protect, and the types of harm that resulted from the Data Breach, unauthorized disclosure of sensitive personal and health-related data, are precisely the harms those statutes were designed to prevent.

88. The FTC has pursued enforcement actions against businesses that, by failing to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class.

89. Defendant has admitted that the PII/PHI of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

90. But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the PII/PHI of Plaintiff and Class Members would not have been compromised.

91. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

92. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII/PHI would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyber-attacks and data breaches in Defendant's industry.

93. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of

the inherent risks in collecting and storing the PII/PHI of Plaintiff and the Class, the critical importance of providing adequate security of that PII/PHI, and the necessity for encrypting PII/PHI stored on Defendant's systems or transmitted through third party systems.

94. It was therefore foreseeable that the failure to adequately safeguard Class Members' PII/PHI would result in one or more types of injuries to Class Members.

95. Plaintiff and the Class had no ability to protect their PII/PHI that was in, and is believed to remain in, Defendant's possession.

96. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

97. Neither Plaintiff nor Class Members contributed to the Data Breach and subsequent misuse of their PII/PHI as described in this Complaint.

98. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII/PHI of Plaintiff and the Class would not have been compromised.

99. There is a close causal connection between Defendant's failure to implement security measures to protect the PII/PHI of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII/PHI of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII/PHI by adopting, implementing, and maintaining appropriate security measures.

100. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their PII/PHI; (iii) lost or diminished value of PII/PHI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their PII/PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII/PHI.

101. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

102. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

103. Plaintiff re-alleges and incorporates by reference each and every allegation above, as if fully set forth herein.

104. Defendant collected, stored, and maintained the PII/PHI of Plaintiff and the Class.

105. Plaintiff and Class Members provided their PII/PHI to Defendant in the ordinary course of Defendant's business as a requirement to engage with Defendant or to be employed by Defendant. Plaintiff and certain Class Members worked for Defendant at a certain rate and supplied Defendant with their PII/PHI in order to obtain employment, which they would not have done had they known of Defendant's lax security practices, including Defendant's failure to timely delete the PII/PHI of former employees.

106. Certain other Class Members paid money to Defendant in exchange for Defendant's services and would not have paid for Defendant's products or services, or would have paid less for them, had they known that Defendant's data security practices were substandard.

107. Defendant solicited, offered, invited, and required Class Members to provide their PII/PHI as part of Defendant's regular business practices. Per Defendant's requirements, Plaintiff and Class Members accepted Defendant's offers and provided their PII/PHI to Defendant.

108. Plaintiff and Class Members entrusted Defendant with their PII/PHI with the understanding that Defendant would safeguard their information.

109. Defendant accepted possession of Plaintiff's and Class Members' PII/PHI for the purpose of engaging with Plaintiff and Class Members to enhance and further their business.

110. When Plaintiff and Class Members provided their PII/PHI to Defendant for the purpose of receiving services or employment from Defendant, they entered into implied contracts with Defendant.

111. Plaintiff and the Class Members thus entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect their PII/PHI, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

112. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

113. Implicit in the agreement between Plaintiff and Class Members and Defendant to provide PII/PHI, was the Defendant's obligation to: (a) use such PII/PHI for business purposes only, (b) take reasonable steps to safeguard that PII/PHI and to delete such information when it was no longer necessary, (c) prevent unauthorized disclosures of the PII/PHI, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII/PHI, (e) reasonably safeguard and protect the PII/PHI of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the PII/PHI only under conditions that kept such information secure and confidential.

114. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

115. On information and belief, at all relevant times Defendant promulgated, adopted, and implemented a written privacy policy whereby it expressly promised

Plaintiff and Class Members that it would maintain administrative, technical, and physical safeguards designed to ensure the security and confidentiality of PII/PHI, and protect against the unauthorized access or use of such information.

116. On information and belief, Defendant further impliedly promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII/PHI would remain protected.

117. Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of their earnings to obtain adequate data security. Defendant failed to do so.

118. Plaintiff and Class Members would not have entrusted their PII/PHI to Defendant or otherwise have engaged with Defendant or accepted employment with Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

119. Plaintiff and Class Members would not have entrusted their PII/PHI to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that they adopted reasonable data security measures.

120. Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

121. Defendant breached the implied contracts made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to

provide accurate notice to them that personal information was compromised as a result of the Data Breach.

122. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII/PHI, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PII/PHI and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

123. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their PII/PHI; (iii) lost or diminished value of PII/PHI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their PII/PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII/PHI.

124. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

125. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

126. Plaintiff re-alleges and incorporates by reference each and every allegation above, as if fully set forth herein.

127. Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of payments made for the purchase of Defendant's services or through their employment.

128. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members.

129. The payments for Defendant's services or employment that Plaintiff and Class Members paid (directly or indirectly) to Defendant should have been used by Defendant, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

130. As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the services with the reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and the inadequate services without reasonable data privacy and security practices and procedures that they received.

131. Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by HIPAA regulations, federal, state and local laws, and industry standards.

132. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by Defendant.

133. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendant traceable to Plaintiff and Class Members.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Ahold as follows:

a. For an Order certifying the Class, as defined herein, and appointing Plaintiff and her Counsel to represent the Nationwide Class;

b. For equitable relief enjoining Ahold from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' PII/PHI, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiff and Class members;

c. For equitable relief compelling Ahold to use appropriate cyber security methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII/PHI compromised;

d. For an award of damages, as allowed by law in an amount to be determined;

e. For an award of attorneys' fees costs and litigation expenses, as allowable by law;

f. For prejudgment interest on all amounts awarded; and

g. Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all issues so triable.

Dated: July 3, 2025

Respectfully Submitted:

*/s/ Karl S. Gwaltney*

**MAGINNIS HOWARD**
Karl S. Gwaltney
N.C. Bar No. 45118
7706 Six Forks Rd, Suite 101
Raleigh, NC 27615
Tel: 919-960-1545
kgwaltney@carolinalaw.com

**THEGRANTLAWFIRM, PLLC**
Lynda J. Grant*

521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: 212-292-4441
Fax: 212-292-4442
lgrant@grantfirm.com

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
Melissa R. Emert*
Gary S. Graifman*
135 Chestnut Ridge Road
Suite 200
Montvale, NJ 07645
Telephone: 201-391-7000
Facsimile: 201-307-1086
memert@kgglaw.com
ggraifman@kgglaw.com

**SOLIDARITY LAW, PLLC**
Jeffrey Neil Young*
9 Longmeadow Road
Cumberland Foreside, ME 04110
Telephone: 207-844-4243
jyoung@solidarity.law

**Pro Hac Vice* Application forthcoming

*Attorneys for Plaintiff and the Putative Class*